IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH CLIFTON SMITH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 05-0474-CG-M |
| | ) | |
| KIM T. THOMAS, Commissioner, | ) | |
| Alabama Department of Corrections, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

This matter is before the court on the motion of Petitioner Joseph Clifton Smith ("Petitioner" or "Smith") to stay (Doc. 61), Petitioner's motion for reconsideration pursuant to Rule 59(e) (Doc. 60), Respondent's response (Doc. 63) and Petitioner's reply (Doc. 64). For the reasons explained below, the court finds that both motions should be denied.

**I. Background**

Smith initiated this action on August 15, 2005 by filing a Petition for Writ of Habeas Corpus (Doc. 1) pursuant to 28 U.S.C. § 2254. Smith filed an Amended Petition on July 25, 2011. (Doc. 52). Smith' petition challenges a 1998 Alabama state court judgment of conviction and death sentence for capital murder. This court denied Smith's petition on September 30, 2013. (Doc. 59). On October 28, 2013, Smith moved for reconsideration pursuant to Rule 59(e) asserting that the court's order dismissing his petition contains substantial factual errors and

1

manifest errors of law with regard to his claim that he is mentally retarded and entitled to Atkins relief. Smith further asserts that this court should stay the proceedings in this case pending the decision of the Supreme Court of the United States in Hall v. Florida, No 12-10882 (2012).

## II. Motion to Stay

Smith contends that the Supreme Court's decision in Hall v. Florida will have a direct impact on the determination in this case. The issue before the court in Hall is whether the Florida scheme for identifying mentally retarded defendants in capital cases violates Atkins v. Virginia. In Hall, the petitioner claims that Florida Courts have conflicted with Atkins "by inventing a new definition of mental retardation which requires a non-existent 'bright line' standardized IQ score of 70 or below which is contrary to the recommendations of the inventors and developers of the very IQ tests the Florida Retardation Statute relies upon by ignoring the scientifically accepted and essential standard error of measurement and use of confidence intervals." Hall, 12-10882, petition for writ of certiorari pp. 5-6.

However, Smith did not properly support his Atkins claim in state court.[1] Smith attempted to assert that he was mentally retarded and that his execution

---

[1] The court notes that Smith raised other issues in state court relating to his IQ. For instance Smith argued that comments made in closing argument about his low IQ implied that he should be sentenced to death because he is mentally retarded. In closing, the prosecution had included the following statement:

> "The Doctor said that this Defendant has a low IQ and I asked him this question because from your own common sense, from your own experience you know it to be true, there are folks out there with marginal IQs who are streetwise. They get along they get by, they

2

would violate the Eighth Amendment as interpreted by Atkins, but failed to plead sufficient facts to show that he suffered from subaverage intellectual functioning or deficit adaptive functioning and did not even plead his IQ score. The Court of Criminal Appeals of Alabama agreed with the Circuit Court that "Smith failed to meet his burden of pleading in regard to this claim." Smith v. State, 71 So.3d 12, 18 (Ala.Crim.App. 2008). As stated by the Criminal Appeals Court:

> Smith pleads only conclusions concerning his mental health and does not even indicate his IQ score in his pleading. The only grounds offered in support of this claim were the following:
>
>> "Mr. Smith has deficiencies in all three of these adaptive areas and clearly meets the mental retardation set forth in Atkins.
>>
>> "As evidenced by his school records and the testimony at trial, both his subaverage intellectual functioning and inability to adapt manifested themselves before Mr. Smith turned 18. Therefore, Mr. Smith meets the three requirements under the Atkins test for mental retardation and imposition of the death penalty on him violates the Eighth and Fourteenth Amendments to the United States Constitution, the Alabama Constitution and Alabama law."
>
> (C.R. 75.) Clearly Smith failed to satisfy the pleading requirements of Rule 32.6(b), ALA.R.CRIM.P.

---

survive sometimes better than the rest of us in certain situations. This man's been in prison, this man's been around, this man is streetwise. He knew what he was doing." (R. 831).

Smith also argued on appeal that because there was testimony that he was borderline retarded, the trial court should have found that his commission of the act while under the influence of extreme mental or emotional disturbance was a mitigating circumstance. None of the IQ related issues raised by Smith provide any additional support for his Atkins claim.

3

Id. at 19. The Criminal Appeals Court further found that even if the claim had been properly plead, the record supports the Circuit Court's conclusion that Smith does not meet the broadest definition of mentally retarded. Id. The Court discussed Smith's argument that it should adopt a margin of error when examining a defendant's IQ. Id. at 19-21. However, the Court reasoned that such a conclusion would in essence expand the definition of mentally retarded adopted by the Alabama Supreme Court in Ex parte Perkins, 851 So.2d 453 (Ala. 2002) and conflict with federal regulations. Id. at 20-21.

As this court stated in the order denying Smith's petition (Doc. 59, pp. 57-58), the Atkins claim is properly before this court because it was raised in Smith's First and Second Amended Rule 32 petitions, but many of the facts now alleged in support of that claim were not contained in Smith's state court submissions. This court can only look to the allegations stated in Smith's Rule 32 petitions. Borden v. Allen, 646 F.3d 785, 816 (11th Cir. 2011). As the Borden Court explained:

> Logically, that court could only undertake an "adjudication of the claim" that was presented to it; we believe that a review of a state court adjudication on the merits in light of allegations not presented to the state court—for example, by examining additional facts or claims presented for the first time in a petitioner's federal habeas petition—would insufficiently respect the "historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts."

Id. (quoting Michael Williams v. Taylor, 529 U.S. 420, 436, 120 S.Ct. 1479, 1490, 146 L.Ed.2d 435 (2000)). Although this court and the state court discussed the merits of Smith's claim and whether it would be appropriate to apply a margin of error to his IQ, this court finds that even if a margin of error should have been

4

applied to such determinations, the state court's finding that Smith's Atkins claim fails because he did not support such a claim, was not unreasonable or contrary to clearly established federal law.

In Smith's Rule 32 petitions, he raised an Atkins claim, arguing that he was mentally retarded and that application of the death penalty to a mentally retarded person violates the Eighth and Fourteenth Amendments. However, in support of this claim, Smith only submitted the following argument:

> 112. Application of the death penalty to, and execution of, a mentally retarded person violates the Eighth and Fourteenth Amendments to the United States Constitution, the Alabama Constitution and Alabama law. Atkins v. Virginia, 536 U.S. 304 (2002). In Atkins, the Supreme Court set out a three prong test to identify mental retardation sufficient to prohibit application of the death penalty. That test requires (1) subaverage intellectual functioning, (2) "significant limitations in adaptive skills," and (3) the manifestation of the first two requirements occurred before the age of 19 Atkins, 536 U.S. at 318. Smith meets all of these requirements.
>
> 113. Smith suffers from sub-average intellectual function. When Smith was transferred to the Monroe County Excel Junior high school, the county board of education classified Smith as "Educably Mentally Retarded" (EMR), based on his "psychological and educations evaluations, academic history, and other pertine[sic] information." In addition, there was testimony at trial that Smith functioned intellectually at the bottom 3rd percentile of all adults. (R. 781).
>
> 114. Smith also suffers from significant limitations in adaptive skills. Atkins defines adaptive skills as '"communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18.' Mental retardation" Definition, Classification, and Systems of Supports 5 (9th ed.1992)." Atkins, at 308 n. 3. Smith has deficiencies in all of these areas. There was testimony at sentencing which showed his inability to adapt because he often acts out impulsively, lacks the ability to formulate a pre-meditated plan and acts as a follower in groups. See Atkins, 536 U.S. at 318 ("…there is abundant evidence that they often act on impulses rather than

5

pursuant to a premeditated plan, and that in group settings they are followers rather than leaders.")

115. In addition, those with mild mental retardation, generally do not academically progress beyond the 6th grade. Diagnostic and Statistical Manual of Mental Disorders (4th Ed., 2000, Text Revision). School records indicate that Smith never progressed beyond the 5th grade. Additionally, even though he was in EMR classes while in the Monroe County school system, he either filed or performed at the "D" level in all subjects.

116. As evidenced by his school records and the testimony at trial, both his sub-average intellectual functioning and inability to adapt manifested themselves before Smith turned 18. Therefore, Smith meets the three requirements under the Atkins test for mental retardation and imposition of the death penalty on him violates the Eighth and Fourteenth Amendments to the United States Constitution, the Alabama Constitution and Alabama law.

R-52, ¶¶ 113-116. Most of the Smith's state court <u>Atkins</u> claim consisted of factual conclusions and statements of law. Smith's only citation to the record was to page 781 of the trial record which includes the following testimony by Dr. Chudy:

Q. And after reviewing these tests did you come to form any opinion about Jody's IQ level?

A. Yes, I did.

Q. And what was that, please, sir?

A. He was found to a full scale IQ of 72, which placed him at the third percentile in comparison to the general population.

Q. Out of a hundred people where would that put him?

A. Third. If you had normally distributed a hundred people in this room, ninety-seven would function higher than he would.

Q. And did you make any findings about a borderline intelligence situation with him?

A. Well, there – there actually is what we call a standard error of measurement of about three or four points. So, you know,

> taking that into account you could – on the one hand he could be as low as a 69. 69 is considered clearly mentally retarded.

TR 781. The above testimony was cited to support petitioner's statement that "there was testimony at trial that Smith functioned intellectually at the bottom 3rd percentile of all adults." The above evidence does not support a finding that Smith had both significantly subaverage intellectual functioning and significant deficits in adaptive functioning. As this court stated in the order denying Smith's petition, all three of the following must be shown for mental retardation to rise to the level of prohibiting execution:

> (1) significantly subaverage intellectual functioning (i.e., an IQ of 70 or below); (2) significant or substantial deficits in adaptive behavior; and (3) the manifestation of these problems during the defendant's developmental period (i.e., before the defendant reached age eighteen).

Holladay v. Allen, 555 F.3d 1346, 1353 (11th Cir. 2009); see also Smith v. State (Jerry Smith), 2007 WL 1519869, at *8 (Ala. May 25, 2007) (stating that "All three factors must be met in order for a person to be classified as mentally retarded for purposes of an Atkins claim.").

Additionally, it is not clear that Alabama courts have required a bright line standardized IQ score of 70 or below as the Hall case alleges exists in Florida. As this court stated in the order denying Smith's petition, the Eleventh Circuit has held that a federal habeas court has discretion to consider the standard error of measurement and the Flynn effect. (Doc. 59, p. 61, citing Thomas v. Allen, 607 F.3d 749, 753 (11th Cir. 2010)). Thus, when there is evidence to suggest a petitioner's IQ should be adjusted downward, a court may consider applying a standard error of measurement and the Flynn effect. However, Smith failed to provide sufficient

evidence to persuade the court that Smith's IQ should be adjusted downward. There was testimony that if a standard error of measurement was applied Smith's IQ could be as low as 69. But considering that same standard error of measurement would also suggest that Smith's IQ could be as high as 75. Where, as here, there was little or no evidence to point towards a downward adjustment, the state Court was not wrong to refuse to apply a standard error of measurement and adjust Smith's IQ downward.[2]

For the reasons discussed above, the court does not find that the Supreme Court's decision in Hall v. Florida will have a direct impact on the determination in this case.

**III. Motion to Reconsider**

Smith has moved for reconsideration pursuant to Rule 59(e). For the reasons discussed above with regard to Smith's motion to stay, the court also finds that reconsideration should be denied.

> The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact. A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.

---

[2] As this court previously explained the instant case can be distinguished from the Thomas case. (Doc. 59, p. 61, n. 24). Unlike the Court in Thomas, this court must give deference to the state court's conclusion. Additionally, unlike the circumstances in Thomas, the parties here did not stipulate that a standard error of measurement was appropriate and there was no evidence that any intelligence assessment ever yielded an IQ score for Smith that was below 70. (Doc. 59, p. 61, n. 24).

8

Jacobs v. Tempur–Pedic Int'l, Inc., 626 F.3d 1327, 1344 (11th Cir. 2010).  Smith has failed to identify any newly discovered evidence or any manifest errors of law or fact.

**CONCLUSION**

For the reasons set forth above, the motions of Petitioner Joseph Clifton Smith to stay (Doc. 61) and for reconsideration pursuant to Rule 59(e) (Doc. 60), are **DENIED.**

**DONE** and **ORDERED** this 21st day of January, 2014

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE